BLOSSOM OIL & COTTON COMPANY v. GRACIE POTEET, BY NEXT
FRIEND.

Decided March 31, April 14, 1910.

**1.—Case Approved.**

The rulings in this case on former appeal (Poteet v. Blossom Oil & Cotton Co., 115 S. W., 289) approved and followed.

**2.—Harmless Error—Issue not Submitted.**

The overruling of a special demurrer to allegations in regard to precautions with respect to dangerous machinery attractive to children was harmless, if erroneous, where the issue attempted to be raised by such allegations was not submitted to the jury.

**3.—Harmless Error—Charge—Assuming Fact.**

The absence of evidence to support the finding of a matter of fact left to the jury by the charge did not make the instruction ground for reversal where the charge did not authorize a recovery upon the finding of such fact alone, but only upon a finding, in connection with it, of other facts sufficient in themselves to support a recovery.

**4.—Charge—Evidence Held to Support.**

Evidence considered and held sufficient to support a charge submitting the question whether plaintiff, a small child, was permitted by the employes of a cotton oil company to wander unattended and play about the machinery of its seed room.

**5.—Negligence—Dangerous Machinery—Care Due to Child.**

Under circumstances here considered a charge is held not erroneous in imposing upon the proprietor of a cotton oil mill the duty to watch over and guard against injury a small child permitted to be in its seed room and near to dangerous machinery by the employe in charge of such room, though such employe was the child's father.

**6.—Charge—Request for Explanation by Jury.**

In an action for negligent injury to a small child, the jury, returning into court, asked explanation as to the application to plaintiff of the definition of ordinary care in the charge. The court answered by giving an additional instruction as to the care required of defendant. Held, that though not responsive to the question asked by the jury, this was not prejudicial to defendant, since the only proper reply to the question would have been that such definition of ordinary care would not have been applicable to plaintiff on account of her tender years and lack of discretion.

**7.—Charge—Assuming Facts.**

An instruction which assumed that the seed room of an oil mill in which plaintiff, a small child, was injured by being caught in a seed conveyor, was a dangerous place, the evidence that it was so being uncontroverted, and that plaintiff's father, who had invited or permitted her presence, and who was an employe of defendant and the only one there present or in charge of the room, was a servant for whose negligence in failing to exercise ordinary care for plaintiff's protection the employer would be liable, was not erroneous, both such assumptions being warranted.

**8.—Injury to Child—Dangerous Machinery—Parent as Servant of Defendant
    —Case Stated.**

Plaintiff, a child four and a half years old, was taken by her mother to the seed room of a cotton oil company, carrying his dinner to the father who was there employed in feeding cotton seed into a conveyor, he being the only employe then in the room. While he was eating, the child by him, the

wife took his place feeding seed into the conveyor. In so doing the pile of seed slid down about her, and at her call the husband ran to her assistance. The child followed him and was caught and mangled in the seed conveyor. The evidence is considered and held to support a recovery by the injured child against the company based on the negligence of the father as defendant's servant.

ON MOTION FOR REHEARING.

9.—Same.

The liability of defendant for negligence of its servant is not altered by the fact that the servant is at the same time the parent of the injured party. The presence of the child unattended about dangerous machinery imposed an obligation on defendants' servants having knowledge of its peril, even though it were a trespasser and brought there contrary to defendants' commands. This duty of the employe as servant did not arise so long as he was exercising care as parent. When, as parent, he ceased to look after the child, his knowledge that it was uncared for and duty to protect it were those of a servant, for default in which the master was liable.

Appeal from the District Court of Lamar County. Tried below before Hon. T. D. Montrose.

*Moore & Park,* for appellant.

*Wright & Patrick* and *Burdett & Connor,* for appellee.

WILLSON, CHIEF JUSTICE.—Appellant operated a cotton seed oil mill. Its seed house was situated about fifty feet from its main building, and was sixty feet wide north and south by two hundred feet long east and west. Near the center of the seed house, along the floor thereof for a distance of about one hundred feet from its west end, appellant had constructed a box about twelve inches in height and about ten inches in width. In this box was a spiral or screw-shaped piece of iron or steel about nine inches in diameter, which, revolving, conveyed seed placed in the box to the cleaning machine and then to the mill in the main building. The covering for the box was in sections—each five feet in length, it seems—and was so arranged that desired openings through which to feed the iron conveyer inside the box could be made, leaving other portions of the box covered. Besides the conveyer just referred to and others, there was in the seed room a sand screen and shaker and fan, three elevators, and shafting, belting and pulleys, located near the floor and uncased. There also was in the room a quantity of cotton seed. March 8, 1907, appellee Gracie Poteet, then about four and one-half years old, stepped into the box described above, while the iron conveyer referred to was revolving therein, and as a result her left foot was cut off and her left leg was so torn, crushed and injured as to make it necessary to amputate same about midway between her knee and hip. In her petition appellee, who sued by her next friend, after alleging that the seed room, because of the machinery and cotton seed therein, was an attractive place to children of her age, and that she had been invited and permitted by appellant's employe in charge of the room to go into same, further alleged that "she was a small child, about four and one-half years of age, too young and

inexperienced to understand or appreciate the dangers to her of being injured while in defendant's aforesaid seed room and about its machinery therein.   On that day plaintiff was carried by her mother, the wife of the aforesaid B. F. Poteet, to defendant's said oil mill plant and into the seed room where her father was at work in charge and control of said seed room in defendant's employ.   That the purpose of her visit, on that occasion, as it had been many days prior thereto, was to carry her father's dinner for him to eat and that her mother might perform his work while he was eating the same. While there, plaintiff was permitted to wander about and over said seed room among defendant's machinery, and on this occasion had passed to the opposite side of the seed conveyer where her mother was shoveling seed into the conveyer and performing the work of B. F. Poteet, an employe of defendant, and said B. F. Poteet knew where she was and what she was doing.   That the cotton seed were piled high where plaintiff's mother was shoveling them into the conveyer, and suddenly they caved in on her up to her waist and she called aloud to her husband to run to her assistance and to help her prevent the conveyer from choking up, and plaintiff hearing her and seeing her father run to her mother, and not appreciating the danger to herself in doing so, ran after her father and attempted to pass over the seed conveyer and stepped upon what appeared to be a solid foundation, over the same, made by a plank placed on the top of said conveyer, when suddenly her foot passed through an opening in said plank which had been obscured by an accumulation of cotton seed, and was caught by the large spiral-shaped steel piece of machinery, or screw, in said conveyer, and was injured" as complained of.   She further alleged that at the time when she "ran after her father to her mother and towards said hole in said seed conveyer, said B. F. Poteet knew of the dangerous condition of the same and that said hole was in said conveyer and that it was deceptively covered with seed, and also knew that plaintiff was following him towards said hole, and could by the use of proper care have prevented her from stepping into said hole, but negligently failed to use proper care to prevent her from stepping into it."   Appellee further alleged that the injury suffered by her was the result of appellant's negligence in failing to properly guard and cover the conveyer, in failing to keep cotton seed removed from it so as to expose the opening she stepped into, in permitting her to be and remain in the seed room, and in failing while she was there to use proper care to prevent injury to her.   In its answer, after excepting to the petition and denying generally the allegations therein, appellant specially denied that appellee was in its seed room by its invitation or consent, or by the invitation or consent of any of its employes authorized to give same; denied that Poteet at the time was in charge of the seed room in the sense that he had authority to invite appellee to enter the seed room, or permit her to remain there; denied that its machinery, etc., was attractive to children or that its attractiveness caused appellee to be in its seed room, and denied that it had been negligent in any particular in the construction of the seed conveyer, etc.; and averred that said seed conveyer

had been constructed and maintained with due care and skill and was not dangerous to those whose duties required them to be in the seed room; that appellee had been repeatedly warned not to enter said seed room, and that her mother and father had been repeatedly instructed not to bring or permit her to be in said room; and that the injury she suffered was an accident for which it was not responsible, and was caused solely by the negligence of appellee's father and mother in bringing her to and permitting her to remain in the seed room, and failing while she was there to properly look after and care for her.

From the uncontradicted testimony it appeared that B. F. Poteet, appellee's father, was an employe of appellant's, charged with the duty to feed the conveyer in the seed room; that at about 12 o'clock on the day she was injured appellee accompanied her mother, who went to the seed room to carry to her husband his dinner, and while he was eating same, to take his place in feeding the conveyer; that while Poteet was engaged in eating his dinner and Mrs. Poteet was engaged in shoveling cotton seed from a mass of seed piled high on the floor, the seed began to slide down and to cover her and choke the conveyer she was feeding; that thereupon she called to her husband to come and assist her; that at that time Poteet and appellee were sitting down eating, about twenty feet from the conveyer, near or against the north wall of the building; that Poteet went hurriedly to his wife, crossing over the conveyer, and was followed by appellee; and that appellee in attempting to cross over the box containing the conveyer stepped into same through an opening therein and was injured as alleged. It further appeared that at once after appellee got into the seed room and until her father began to eat his dinner, she played around in the room on or with the cotton seed. As to the circumstances immediately surrounding the accident Poteet testified as follows: "I took my dinner and went over next to the north wall and sat down, and Gracie got up and said, 'Daddy, I believe I will eat dinner with you;' and she set down, taken out some meat and bread and went to eating; and the seed where my wife was feeding was piled up as high as this ceiling (indicating ceiling in courtroom), and she had dug out through the seed, she had dug out until the seed slid down around her waist, and she hallowed to me, for me to help her; and when I started Gracie started and said, 'Daddy, I am coming, too.' I never thought about the child getting hurt, and run to my wife; I was thinking about my wife and the seed sliding in on her, and the next thing I knew I got on top of the conveyer, and the next thing I knew Gracie was at my heels, and the next thing hallowed, 'Mamma! Mamma!' and I turned around and seen she was fastened, and it scared me until I didn't know what to do, but all I thought of was running and throwing the belt, and run something like 100 feet, kicked the belt off and stopped the machinery."

A portion of the trial court's charge to the jury was as follows: "Therefore, if you believe from the evidence that the plaintiff entered or was carried into the seed room of defendant at the special instance and request of any of the employes of defendant authorized

to give consent by their agency, or that she was permitted by any such employe to enter said seed room; and if you believe from the evidence that she was permitted by any of said employes to wander around in said room unattended and to play among the machinery in operation in said seed room just prior to and at the time of the injury to her; and if you believe that such machinery while in operation, was dangerous to one of plaintiff's age and discretion, if so permitted to wander around and play among such machinery in operation; and if you further believe that such machinery while in operation was known by said employes of defendant to be dangerous to a child of plaintiff's age and discretion, if plaintiff wandered around and played among such machinery, while in operation, and if you believe from the evidence that the seed conveyer in operation in said seed room had a hole in the top of the box or covering around it, which hole was hidden by cotton seed accumulated on and over it, and that plaintiff stepped into said hole and was injured by such conveyer revolving in said box or covering; and if you believe from the evidence that such hole in said box or covering (if there was such hole) was known to defendant, or any of its said employes, or that by the exercise of ordinary care it could have been known to them; and if you believe from the evidence that the permitting by defendant's said employes of plaintiff to enter said seed room and wander around and play among such machinery and near to said conveyer (if it be a fact that she was permitted by defendant's said employes to enter said seed room and wander around and play among such machinery and near to said conveyer) was negligence on the part of the defendant or its said employes, as that term is defined in other parts of the charge; and if you believe such negligence, if any, proximately caused the injury to plaintiff; and if you believe that the injury to plaintiff could have been prevented or avoided by the defendant, ·or its said employes, by the exercise of ordinary care to one of her age and discretion; then you will find for the plaintiff, and unless you so find you will find for the defendant."

The appeal is from a judgment in appellee's favor for the sum of $7000.

*After stating the case as above.*—Many of the questions made by the assignments were determined by this court when the case was before us on an appeal by appellee from a judgment sustaining a general demurrer to her petition. (Poteet v. Blossom Oil & Cotton Co., 115 S. W., 289.) The conclusions then announced were reached after careful consideration had been given to the contentions made by the oil and cotton company. As we still entertain the views then expressed, the assignments which again present questions determined on that appeal are overruled.

Appellant specially excepted to that part of appellee's petition "which alleged that the place was attractive to children and that plaintiff and other children had been permitted to go in and loiter in said seed room," and urges as erroneous the action of the court in overruling its exception. But an issue as to whether the seed room was attractive to children or not was not submitted to the jury.

Therefore, if the ruling of the court complained of was erroneous, it was harmless.

The paragraph copied in the statement from the charge of the court to the jury is attacked as erroneous on several grounds: (1) It is insisted that there was no evidence that appellee "entered or was carried into the seed room at the special instance and request of any of the employes of defendant authorized to give consent by their agency." If it should be conceded that there was no such evidence, and that the portion of the charge quoted therefore was erroneous, we do not think it would furnish a reason for reversing the judgment. The jury were not authorized by the charge to find appellant to have been guilty of negligence, if they believed appellee entered or was carried into the seed room at the "special instance and request" of any of appellant's employes. They were required to believe, before finding appellant to have been guilty of negligence, that its employes permitted appellee to "enter said seed room and wander around and play among such machinery and near to said conveyer." Therefore, we are unable to see how appellant's rights could have been prejudiced by the portion of the charge complained of. Ft. Worth & D. C. Ry. Co. v. Peters, 7 Texas Civ. App., 78, 25 S. W., 1078; Gulf, C. & S. F. Ry. Co. v. Greenlee, 70 Texas, 560; Price v. St. Louis S. W. Ry. Co., 38 Texas Civ. App., 309, 85 S. W., 858; Galveston, H. & S. A. Ry. Co. v. Udallo, 91 S. W., 333. (2) It is further insisted that there was no evidence that appellee was "permitted to wander around in the seed room unattended or to play among the machinery in operation in the seed room." The evidence was that during a period of five or ten minutes after she got into the seed room, before her father began to eat his dinner and while he was talking to her mother, appellee was "playing on the cotton seed and playing around." It seems to us that the testimony specified sufficiently refutes appellant's contention. (3) It is still further insisted that the paragraph referred to of the court's charge was erroneous in that it imposed on appellant a duty to watch over and guard appellee against injury while in the seed room, and declared it to be liable if it negligently failed to perform that duty. Under the circumstances stated in other portions of said paragraph of the charge, such a duty, we think, rested upon appellant. Poteet v. Blossom Oil & Cotton Co., 115 S. W., 289.

Before the jury had concluded their deliberations they returned into open court and presented to the court a writing signed by their foreman, as follows: "We, the jury, can not agree in part on the meaning implied in regard to a part of the first paragraph, 'ordinary care is that degree of care that an ordinarily careful and prudent person would exercise under the same or similar circumstances.' Apply to and at the time of the injury to her." After the court had read the communication so presented to him the following colloquy occurred: The Court: "Gentlemen, I don't believe I understand the question. Do you mean to ask whether or not it applied to that time?" Jury: "Directly." Court: "The direct time—as to whether it applied to the direct time she fell." Jury: "At the time she was injured and all the time she was in the seed room." . . .

Defendant's Counsel: "Now, they want additional instructions." Court: "Yes; and I will merely answer their question." After preparing it, the court read to the jury a writing as follows: "Gentlemen: The court answers your question propounded in this case as follows: That the employe of defendant must have acted throughout the whole time she was in the seed house as a person of ordinary care and prudence would have acted under the same circumstances to prevent injury to a child of plaintiff's age and discretion, and if you find that during said time defendant's employe, B. F. Poteet, failed to exercise such care as an ordinarily careful and prudent person would have exercised during the time she was there, and as a proximate cause of such failure, if any, plaintiff was injured, you will find for plaintiff." After so reading, the court remarked to the jury: "That is a definition of ordinary care—is just a legal definition of it, and applied to the facts of the case as I understand will be an answer to your question." Appellant excepted to and assigns as error the action of the court in so further instructing the jury. Several reasons why the instruction should be held to be erroneous are urged by appellant. Those of them not referable to a view of the law contrary to that taken by us when the case was first before us will now be stated. (1) It is insisted that the instruction was not responsive to the question propounded by the jury, in that the jury sought information as to whether or not the portion of the main charge defining "ordinary care" applied to appellee or not at the time she was injured. We are not prepared to say that a fair interpretation of the meaning of the language used by the jury in propounding the question would not support appellant's contention. But, conceding that the inquiry by the jury should be so construed, that the court failed to answer the question, we think, is not a reason why the judgment should be set aside. For if the court had answered the question as so interpreted, he should have told the jury that said portion of the main charge did not, on account of her tender years and lack of discretion, apply to appellee. Cook v. Navigation Co., 76 Texas, 358; Ollis v. Houston, E. & W. T. Ry. Co., 31 Texas Civ. App., 601, 73 S. W., 30; Gulf, C. & S. F. Ry. Co. v. Cunningham, 30 S. W., 368. That the court did not so instruct the jury could not have prejudiced appellant's rights. (2) It is further insisted that said instruction was on the weight of the evidence in that the court assumed (1) that Poteet was an employe of appellant's with authority to bind it by his conduct towards appellee; (2) that the seed room was a dangerous place for a child of appellee's age and discretion to be in; and (3) in that the court unduly emphasized the duty Poteet as appellant's employe owed to appellee, and indicated to the jury that he believed Poteet to have been guilty of negligence. We are inclined to think the instruction is fairly subject to the criticism urged that it assumed the place to be a dangerous one and appellant to be liable for the negligence, if any, of Poteet. But we do not agree that the judgment therefore should be reversed. The testimony was uncontroverted and conclusive that the seed room was a dangerous place for a child of appellee's tender age to be in unattended to and uncared for. The

testimony was uncontroverted and conclusive that at the time appellee was injured she had been abandoned by her mother and her father and left in said room free to follow unrestrained her own childish impulses. The testimony being as stated, we think the court had a right to assume as an undisputed fact that the seed room, as to appellee at the time she was injured, was a dangerous place. The evidence was uncontroverted that Poteet was appellant's employe, that he was in the seed room during all the time appellee was therein before she suffered the injury complained of, and that during all that time he was the only one of appellant's employes in the seed room. Whatever may have been his real authority as appellant's employe, the fact was that during all the time appellee was therein before she was injured, as the only employe of appellant's therein, he actually was in charge of the seed room. As Poteet in all he did and all he omitted to do was acting within the apparent scope of his authority as appellant's employe, we think the court had a right to assume that if he had been guilty of negligence appellant was liable, without reference to the extent of his real authority as its employe. The remarks of the court in Cook v. Houston Direct Navigation Co., 76 Texas, 357, we think apply here: "When the company left the management of the boat to its servants, the duty devolved upon them, and it can not be permitted to say that their action in allowing the children on the boat was contrary to orders, and that it was not liable. A master is liable for the wrongful acts of his servant done within the scope of his authority, although they may be done in disobedience of express orders." We do not think the instruction justly is subject to the criticism that the court thereby intimated to the jury that he believed Poteet had been guilty of negligence.

By its twentieth assignment appellant questions the sufficiency of the evidence to support the judgment. It appeared without dispute in the testimony (1) that appellee was a child only four and one-half years of age, without greater intelligence and discretion than ordinarily is possessed by children of that age; (2) that the seed room was a dangerous place for a child of her age and discretion to be, if left therein unattended and uncared for; (3) that she was left by her mother in the seed room with appellant's employe, but otherwise unattended and uncared for, while she (the mother) engaged in doing work assigned by appellant to said employe; (4) that said employe knew appellee's age and of her lack of intelligence and discretion, and knew of the dangers to be incurred by her if left in the room unattended and uncared for; (5) that said employe was the only other person then in the seed room; (6) that said employe in response to a call from the mother for assistance left appellee and walked hurriedly towards the mother, stepping over the open box containing the conveyer covered and concealed from view by cotton seed; (7) that he knew appellee was following close behind him and would endeavor to cross over the conveyer; and (8) that said employe by neither word nor act warned her of the danger she was about to incur, nor made any effort whatever to prevent her from following him. We think the testimony was amply sufficient to

support the judgment.    North Texas Construction Co. v. Bostick,
98 Texas, 243.

The judgment is affirmed.

Hodges, Justice, not sitting.

ON MOTION FOR REHEARING.

The correctness of the disposition made of the appeal, so far as the
merits of the case are concerned, may be tested by the answer which
should be given to the following question propounded by appellant
in its motion for a rehearing: "Under the evidence exhibited by
the record, is it possible that the court can hold that the mother over
the protest of the mill management can bring her child into the
mill where the father is employed as a day laborer and who also
has been told not to allow the child to enter, and thereby impose the
duty on the mill to watch over and care for her to see that she does not
voluntarily injure herself? In North Texas Construction Co. v.
Bostick, 92 Texas, 242, after declaring that the defendant company
"did not owe the duty of guarding its premises and machinery
against trespassers, even though they may have been children of very
immature discretion," the Supreme Court said: "We think, how-
ever, in analogy, at least, to the doctrine of discovered peril, when
an employe in charge of the gins saw a child of tender years in-
truding into a place of danger, or in such close proximity to the
machinery that he was likely to so intrude, it became his duty to
take steps for its protection." If the law is as that court in the
statement quoted declared it to be, we think the question propounded
must be answered as we have answered it—in the affirmative. The
most unfavorable view which can be taken of appellee's presence in
the seed house is that she was there as a trespasser. If, nevertheless,
under the circumstances suggested by the Supreme Court, appellant
owed to her the duty to take steps for her protection, that her mother
carried her to the seed room certainly would not be a reason why
appellant should be held to be relieved of the duty. Nor should
the fact that both her mother and her father also were in the seed
room be held to relieve appellant of such a duty, if it knew that
they, abandoning all care of her, had left her free to act upon her
own childish impulses. Such knowledge on the part of appellant,
or on the part of its employe in charge of the seed room, it seems
to us, would charge it with as great a duty to appellee as it would
have owed to her had neither her father nor her mother been in
the seed room. The fact that appellee's mother was in the seed room
has never been regarded by us as a reason for doubting the existence
of a duty on the part of appellant to appellee. For she had aban-
doned to appellant's employe the care of the child, while she en-
gaged in the discharge in his stead of the duty he owed appellant to
feed the conveyer. The greatest difficulty experienced by us in reach-
ing the conclusion that a liability on the part of appellant to appellee
had been shown, grew out of the dual relationship borne by Poteet to
appellee. So long as Poteet, the father, was discharging the duty
he owed to appellee to protect her from the dangers surrounding her

in the seed room, appellant owed her no duty to take steps for her protection. But when Poteet, the father, abandoned and left her uncared for amid the dangers surrounding her, Poteet, the employe of appellant in charge of the room, knew it, and the duty at once devolved upon him as such employe to take steps for her protection. A failure on his part as appellant's employe to discharge that duty would be negligence for which appellant would be liable. When Poteet, the father, to the knowledge of Poteet, the employe, abandoned the child, the duty which Poteet, the employe, may under the circumstances have owed to her, was not less than it would have been had he not been her father. It must be borne in mind that the suit was not by the father and the mother, or by either of them, but by the child, and that she was neither responsible for nor bound by their conduct, or by the conduct of either of them. In determining her rights and appellant's duty, after she had been abandoned by her father, the fact that appellant's employe in charge of its seed room was her father should be ignored; for neither her right nor appellant's duty under such circumstances was different from what it would have been had its employe not been her father.

Appellant requests us, in the event its motion for a rehearing should be refused, "to overrule in terms each and every assignment of error presented" by it. This we now do.

The motion for a rehearing is overruled.

*Affirmed.*

Writ of error granted. Reversed and rendered for defendant, 104 Texas, ———.